**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

Case No. 1:22-cv-365

*In re Ex Parte* Application of

CFE International LLC,

          Applicant,

Antaeus Group LLC,

          Respondent.

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF *EX PARTE*
APPLICATION FOR ORDER
PURSUANT TO
28 U.S.C. § 1782 PERMITTING
CFE INTERNATIONAL LLC TO
ISSUE A SUBPOENA FOR THE
TAKING OF A DEPOSITION AND
THE PRODUCTION OF
DOCUMENTS FROM ANTAEUS
GROUP LLC**

REED SMITH LLP
401 Congress Avenue
Suite 1800
Austin, TX 78701

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Attorneys for Applicant CFE International LLC*

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................ 3

I.      Antaeus Group ............................................................................................ 3

II.     The Other Key Players ............................................................................... 4

       A.     The Relationship Among Calhoun, Gutierrez, and Turrent ................................ 5

III.    The Mexican Proceeding ........................................................................... 6

IV.   Why Discovery Is Needed ......................................................................... 9

       A.     The Waha Connector Agreements ........................................................ 10

       B.     Antaeus Group's Involvement in Three Actual or Potential Transactions Preceding the Waha Connector Agreements ........................................ 10

              1.     Masco Trading Services ("MTS") ..................................... 11

              2.     Advisory Group LLC ...................................................... 12

              3.     The Pomelo Connector ................................................... 12

       C.     The Structure and Activities of Antaeus Group .................................... 14

SECTION 1782 ENTITLES CFEI TO TAKE DISCOVERY FROM ANTAEUS GROUP ....... 14

I.      CFEi's Application Meets Section 1782's Threshold Requirements ............... 14

II.     CFEi's Application Also Meets the Discretionary Factors Courts Consider in Granting Section 1782 Applications ............................................... 17

       A.     Antaeus Group Is Not a Participant in the Mexican Criminal Proceeding ........... 17

       B.     The Mexican Authorities Are Receptive to U.S. Judicial Assistance .................. 18

       C.     This Application Is an Attempt to Obtain Probative and Relevant Evidence for a Foreign Proceeding, and in No Way Circumvents Foreign Proof-Gathering Restrictions ................................................................... 19

       D.     The Discovery Sought Is Not Unduly Intrusive or Burdensome ...................... 19

III.    This Application Should Be Granted *Ex Parte* .......................................... 20

CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Akhmedova*,
  2020 WL 6376651 (W.D. Tex. Oct. 30, 2020) ........................................................20

*In re Application of Eurasian Bank Joint Stock Co.*,
  2015 WL 6438256 (N.D. Tex. Oct. 21, 2015) ..........................................18, 20, 21

*In re Ex Parte Application of Grupo Mexico SAB de CV for an Ord. to Obtain*
  *Discovery for Use in a Foreign Proceeding*,
  821 F.3d 573 (5th Cir. 2016) ..............................................................................20

*Matter of Application of O2CNI Co., Ltd.*,
  2013 WL 5826730 (N.D. Cal. Oct. 29, 2013) ......................................................16

*In re Application of Qumma*,
  2005 WL 937486 (S.D.N.Y Apr. 22, 2006) ............................................................18

*In re Caceres*,
  2020 WL 2523120 (S.D. Miss. May 18, 2020) ....................................................16

*Chevron Corp.* v. *3TM Consulting*,
  LLC, 2010 WL 8814519 (S.D. Tex. Apr. 5, 2010) ..............................................20

*In re Children's Inv. Fund Found. (UK)*,
  363 F. Supp. 3d 361 (S.D.N.Y. 2019) ..................................................................16

*Ecuadorian Plaintiffs* v. *Corp.*,
  619 F.3d 373 (5th Cir. 2010) ..............................................................................18

*In re Frederick*,
  2020 WL 5742772 (W.D. Tex. Sept. 24, 2020) ....................................................20

*Grupo Mexico Sab De CV*, 2014 WL 12691097 (N.D. Tex. Oct. 17, 2014) ................................18

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ......................................................................3, 16, 17, 18

*LEG Q LLC* v. *RSR Corp.*,
  No. 3:17-CV-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) ..........................15

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006), 939 F.3d 520 (2d Cir. 2019) ......................................19

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
 No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802 (N.D.N.Y Aug. 18, 2008) .........................19

*In re Request for Judicial Assistance from the Consumer Court of Istanbul in
 Istanbul, Turkey*,
 2021 WL 6750936 (W.D. Tex. June 11, 2021) ........................................................................15

*In re Sarrio S.A.*,
 173 F.R.D. 190 (S.D. Tex. 1995)..............................................................................................18

**Statutes**

28 U.S.C. § 1782.................................................................................................... *passim*

CFE Law ...........................................................................................................................7

Mexico's General Law on Administrative Responsibilities ...........................................8

Mexico's National Criminal Procedure Code ("CNPP")...................................15, 16, 18

## **INTRODUCTION**

CFE International LLC ("CFEi"), a Texas-based natural gas company and wholly owned subsidiary of the state-owned electric utility of Mexico, Comisión Federal de Electricidad ("CFE"), seeks, through this *ex parte* application (the "Application"), an order pursuant to 28 U.S.C. § 1782 granting CFEi discovery from Antaeus Group LLC ("Antaeus Group") for use in a foreign criminal proceeding.   That proceeding is pending before the Mexican Attorney General and filed with the Office of the Special Anti-Corruption Prosecutor in Mexico City, Mexico (the "Mexican Criminal Proceeding").

The Mexican Criminal Proceeding involves claims that, in December 2016, Javier Gutierrez Becerril ("Gutierrez"), a former executive of CFE and former Chief Operating Officer of CFEi, and Guillermo Turrent Schnaas ("Turrent"), a former executive of CFE and former Chief Executive Officer of CFEi, as public servants, violated the Mexican Constitution and Mexican criminal and procurement laws by improperly awarding a U.S. company, WhiteWater Midstream LLC and its subsidiaries and affiliates (collectively, "WWM"), massive natural gas contracts to build, transport capacity, and market gas on a Texas pipeline whose construction was sponsored by CFE (the "Waha Connector Agreements").   (Declaration of Fernando Aponte Martínez ("Aponte Decl.") ¶¶ 30–33).  These contracts, with an estimated revenue to WWM of hundreds of millions of dollars over the lifetime of the deal, were awarded by Gutierrez and Turrent for the benefit of WWM and to the detriment of Mexico and its people.  *Id*.

WWM, the beneficiary of the improperly awarded Waha Connector Agreements at issue in the Mexican Criminal Proceeding, was formed by an individual, Matthew Calhoun, WWM's co-founder and President of Commercial Operations, who has longstanding personal and professional relationships with Gutierrez and Turrent.

Antaeus Group, from which CFEi now seeks discovery in aid of the Mexican Criminal Proceeding, is a business entity closely linked to Calhoun, who has a close nexus to Turrent and Gutierrez, the latter of whom, like Calhoun, was a principal of Antaeus Group.  Even prior to securing the Waha Connector Agreements, Calhoun, through Gutierrez and Turrent, sought to orchestrate, and in some cases succeeded in orchestrating, transactions with CFE in which Calhoun, through Antaeus Group, stood to benefit.  (Declaration of Sam Anson ("Anson Decl.") ¶¶ 37–38).

The information CFEi seeks from Antaeus Group is limited in scope.  CFEi requests information concerning Antaeus Group's communications and activities with Gutierrez and Turrent in their capacities as executives at CFE and CFEi.  Specifically, CFEi requests documents and testimony relating to Antaeus Group's (1) involvement in the Waha Connector Agreements; (2) involvement in earlier actual or potential transactions discussed below (Sinaloa Pacific LNG Project, Masco Trading Services, Advisory Group, and Pomelo Connector); and (3) structure and activities, including its ownership and organizational structure, investments and interests in CFE-sponsored pipelines, attempted and actual business with CFE, transactions with Gutierrez, Turrent, Emilio Alejandro Cosio Santamaria ("Cosio") (an individual who worked closely with Gutierrez and Turrent at CFEi), and Mark Bayse (who at one time was a principal, along with Calhoun and Gutierrez, of Antaeus Group), and transfers of money or anything of value between or among Antaeus Group and CFE, CFE-associated entities, entities controlled by Gutierrez or Turrent, and other Calhoun-controlled entities.

This information goes to the heart of the Mexican Criminal Proceeding:  evidence relating to the nature of Calhoun's communications and relationship with Gutierrez and Turrent would aid the Mexican prosecutors in their investigation of the procurement process Gutierrez and

Turrent unlawfully failed to follow in awarding the Waha Connector Agreements to WWM, an entity that Calhoun founded.  (Anson Decl. ¶¶ 24–25).

This Application meets each of Section 1782's three statutory requirements: Antaeus Group "resides" or can be "found" in this Court's district; the discovery sought is "for use" in a foreign proceeding; and CFEi is an "interested person" in that proceeding.  28 U.S.C. § 1782; s*ee also Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 256–59 (2004).

Moreover, the four discretionary factors a court considers in determining whether to grant a Section 1782 request for discovery, *id.* at 264–65, also all support the granting of the Application.  As explained below, Antaeus Group is not a participant in, nor does it appear in, the Mexican Criminal Proceeding.  The Mexican courts are receptive to U.S. federal-court assistance under Section 1782.  CFEi's discovery requests do not attempt to circumvent foreign proof-gathering restrictions, as they are a good-faith effort to obtain probative evidence.  Nor are they unduly burdensome, as they are tailored to obtain information that is of substantial importance and interest to the Mexican Criminal Proceeding and would be permitted under the Federal Rules of Civil Procedure, which govern discovery produced pursuant to Section 1782 unless the court prescribes otherwise.  28 U.S.C. § 1782(a).

CFEi thus respectfully requests that the Court grant this Section 1782 Application.

## **FACTUAL BACKGROUND**

### I.    **Antaeus Group**

CFEi seeks documents from Antaeus Group, an entity formed on May 6, 2013 by Calhoun in Austin, Texas.  (Anson Decl. ¶ 15).  Calhoun is listed in Texas business registration filings as the Managing Member and Governing Person of Antaeus Group and represents himself as the President and CEO.  *Id.*

An Antaeus Group presentation, dated as of the second quarter of 2013, lists Gutierrez as a "principal" of Antaeus Group, along with Calhoun and an individual named Mark Bayse. The presentation provides an Antaeus Group email address for Gutierrez and proposes for Antaeus Group to co-develop a liquefied natural gas project with CFE in Sinaloa, Mexico under a revenue-sharing arrangement with CFE (the "Sinaloa Pacific LNG Project"). (Anson Decl. ¶ 26). This presentation clearly shows the close linkage between Antaeus Group, Calhoun, and Gutierrez.

## II.     The Other Key Players

CFEi is a U.S.-based natural gas company and wholly owned subsidiary of CFE. (Aponte Decl. ¶¶ 9–10, 20). CFEi was formed in 2015, with formal operations taking effect in 2016. *Id.* Its principal place of business and headquarters are in Houston, Texas. (Aponte Decl. ¶ 4). CFEi operates as the international trading arm of CFE, procuring natural gas in the U.S. market for transport to Mexico. (Aponte Decl. ¶ 10). In 2014, the prior Mexican administration instituted a constitutional reform that privatized the energy sector, opening it up to private investment and competition for the first time in over seventy years. (Aponte Decl. ¶ 6). It was at this time that Gutierrez and Turrent joined CFE to help the company take advantage of the energy industry's expanded reliance on natural gas, including from U.S. sources, which is used to power the production of electricity in Mexico. (Aponte Decl. ¶ 8).

Gutierrez joined CFE in April 2014, the same month that the prior Mexican president submitted the energy reform bill to Congress for approval, and served as Subdirector of Modernization there through February 2017. He also served as COO of CFEi from June 2015 until December 2018. (Aponte Decl. ¶ 31). Turrent served as Director of Modernization at CFE from January 2013 through September 2016. He was also the CEO of CFEi from June 2015 until December 2018. *Id.*

WWM is a limited liability company that was incorporated in Delaware in March 2016. (Anson Decl. ¶ 17). Its formal operations began in June 2016. WWM is a midstream service provider that operates in the gas delivery and sale business.[1] Its principal place of business is Austin, Texas. *Id*. After engaging in a series of negotiations and transactions with CFE and CFEi through Antaeus Group, Calhoun formed WWM with Christer Rundlof ("Rundlof"). *Id*.

### A.    The Relationship Among Calhoun, Gutierrez, and Turrent

Calhoun's relationship with Gutierrez and Turrent was not the arms-length one expected between parties to the 2016 Waha Connector Agreements. In the aggregate, these agreements had an over twenty-year term and an estimated total revenue to WWM of hundreds of millions of dollars, and were governed by strict Mexican constitutional and criminal procurement and transparency laws. (Aponte Decl. ¶¶ 14–18).

Calhoun's relationship with Gutierrez and Turrent began years prior to CFE's award to WWM of the Waha Connector Agreements at issue in the Mexican Criminal Proceeding. Calhoun had worked closely with Turrent in the U.S. energy industry over a decade prior to these contracts. From 2000 to 2004, Turrent served as Senior Vice President at Shell Energy, while Calhoun worked as a trader. (Anson Decl. ¶ 28). Notably during this period, both Calhoun and Turrent were implicated in a 2002 Federal Energy Regulatory Commission investigation into allegedly fraudulent activity within Calhoun's trading group. (Anson Decl. ¶ 29).

As noted above, a 2013 Antaeus Group presentation lists both Calhoun and Gutierrez as principals of the entity, and Antaeus Group was apparently seeking to do business

---

[1]    Midstream natural gas companies operate the pipeline facilities that process, transport, and sell gas downstream from natural gas producers to other consumers or midstream players.

with CFE at a time when Turrent had already begun working as Director of Modernization there, and mere months after Calhoun formed Antaeus Group.

Moreover, public filings for Gutierrez's and Turrent's personal consulting entities during their tenure as public servants at CFE, including during the negotiations surrounding the Waha Connector Agreements, indicate Gutierrez and Turrent were closely affiliated with Calhoun and had been for years prior to the Waha Connector transaction.  Gutierrez and Turrent listed Calhoun's personal address, also the registered address for Antaeus Group—2455 Dunstan Road, Suite 336, Houston, Texas—as the address in public filings for their personal energy consulting companies.  (Anson Decl. ¶¶ 30–32).  For example, the month Gutierrez joined CFE in April 2014, Calhoun's address was listed as either the personal contact or registered entity address in public filings for both Gutierrez's personal energy consulting entity and for a consulting entity he formed with Turrent.  (Anson Decl. ¶ 32).

It is against this backdrop of a close, longstanding relationship among Calhoun, Gutierrez, and Turrent, including Gutierrez's role as a principal of Antaeus Group, that Antaeus Group sought numerous business opportunities with CFE and CFEi, eventually culminating in Turrent's and Gutierrez's awarding the Waha Connector Agreements to Calhoun's newly formed company, WWM, in contravention of Mexican procurement laws.  As discussed below, information about the communications and transactions between Gutierrez, Turrent, and Calhoun, through Antaeus Group, would help elucidate the nature of their relationship and advance the efforts of the Mexican authorities to investigate the circumstances surrounding the award of the Waha Connector Agreements to WWM.

## III.    The Mexican Proceeding

After CFE's and CFEi's management changed with a new Mexican governmental administration, CFEi's current officers, through a newly appointed Chief Compliance Officer in

December 2020, learned that Gutierrez had, in February 2017, executed a formal assignment of several U.S.-based CFE contracts to CFEi without proper power of attorney and public notarization, a significant discrepancy in Mexico's formal legal system.  (Aponte Decl. ¶¶ 30–33).  This discovery prompted a review of the contracts assigned, which included the Waha Connector Agreements, as well as a review of the prior management's business conduct.  Through this process, CFEi learned of suspect irregularities in how and on what terms the Waha Connector Agreements were awarded to WWM.  *Id.*

The primary discovery of CFEi's current management was that, in December 2016, key former CFEi executives, including Gutierrez and Turrent, on behalf of CFE, improperly awarded the Waha Connector Agreements, valued at hundreds of millions of dollars, to Calhoun's company, WWM, without complying with the strict Mexican constitutional and criminal procurement regulations that govern public contracts.[2]  *Id*.  Calhoun and Rundlof were the principal negotiators for WWM and its affiliates.  The contracts involved several agreements that included WWM's obligation to construct a connector pipeline for CFE—the Waha Connector—

---

[2]   CFE, CFEi, and their employees are governed by constitutional, criminal, and entity-specific laws that apply to public entities and public servants.  (Aponte Decl. ¶¶ 14–18).  In addition to general Mexican tender and procurement laws that establish obligations for all public sector supply and service contracts, they are also subject to a Mexican federal law, the CFE Law (2014), which mandates specific tender and procurement procedures for CFE and its affiliates.  (Aponte Decl. ¶¶ 15–16).  CFE and CFEi procurement procedures are further regulated by detailed binding tender guidelines issued, and periodically updated, by CFE's Board of Directors.  (Aponte Decl. ¶ 18).

The CFE Law also prohibits CFE from entertaining proposals from, or entering into contracts with, individuals or entities that may represent a conflict of interest, and requires that its employees at all times act with honesty and transparency in the exercise of their functions, including when entering into transactions affecting public assets.  (Aponte Decl. ¶¶ 15, 33).

Mexico's General Law on Administrative Responsibilities also provides for obligations that govern public servants' management of public resources, including prohibitions against conflicts of interest and transparency requirements.  (Aponte Decl. ¶ 17).

and to market capacity on, and transport large volumes of natural gas via, this pipeline from West Texas to one of CFE's pipeline header systems called the Waha Header.[3]  *Id*.

Prior to awarding the contract, CFE was obligated to undergo and document a public tender process pursuant to Mexican constitutional and criminal laws.  (Aponte Decl. ¶¶ 14–18).  However, in contravention of this process, CFE did not seek or receive bids from other entities before committing to award the massive contracts to WWM.  (Anson Decl. ¶¶  71–80).  Moreover, WWM lacked the requisite industry experience and credit history that would have qualified it to enter into contracts with such large natural gas volume, term length, and value.  (Aponte Decl. ¶ 32).  At the time the contracts were awarded to WWM, Calhoun and Rundlof had formed the entity just months prior, in March 2016.  *Id*.  In addition, the terms of the agreements unfairly benefitted WWM to the detriment of CFE and CFEi, and at the expense of Mexican public assets and Mexican consumers.  (Aponte Decl. ¶ 32).

In August 2021, in accord with its obligations under Mexican criminal law to report likely criminal acts, and as a victim whose legally protected public assets were harmed by the contracts procured through such criminal acts, CFEi reported suspected violations of Mexican procurement and criminal anti-corruption laws to the Mexican Attorney General. (Aponte Decl. ¶¶ 19–20, 34)

In response to CFEi's criminal complaint, the Office of the Mexican Special Anti-Corruption Prosecutor in Mexico City opened an investigation into Gutierrez's and Turrent's allegedly criminal abuses of power, which is still ongoing.  (Aponte Decl. ¶ 35).  CFEi has cooperated, and intends to continue cooperating, with this investigation by providing relevant information to the prosecution in connection with the proceeding.  *Id*.

---

[3]    These contracts were among the contracts later assigned in early 2017 to CFEi.  (Aponte Decl. ¶ 30).

## IV.    Why Discovery Is Needed

The allegations underlying the Mexican Criminal Proceeding concern Gutierrez's and Turrent's award of the Waha Connector Agreements to WWM, an unqualified Calhoun-founded entity, in violation of Mexican procurement law.  CFEi, through this Application, seeks discovery from Calhoun's investment vehicle, Antaeus Group, of which Gutierrez was also a principal.  There is evidence that, prior to the Waha Connector transaction, Calhoun, through Antaeus Group, attempted to execute or successfully executed several other natural gas transactions with Gutierrez and Turrent, while they were executives at CFE and CFEi.  Antaeus Group was or would have been the beneficiary of these earlier transactions, just as WWM ultimately was in the later Waha Connector transaction.

All of the discovery CFEi seeks from Antaeus Group is designed to obtain information about these prior transactions between Calhoun (through Antaeus Group) on the one hand, and CFE, CFEi, Gutierrez, Turrent, Cosio, and Bayse, or any entity controlled by these individuals, on the other hand, in aid of the Mexican Criminal Proceeding.  This discovery would help adduce and explain the conduct of these individuals leading up to and throughout Gutierrez's and Turrent's circumvention of Mexican procurement law in connection with the Waha Connector transaction.

CFEi requests an order permitting it to serve a subpoena on Antaeus Group requesting testimonial and documentary discovery relating to Antaeus Group's (1) involvement in the Waha Connector Agreements (Doc. Request 5 and Dep. Topic 4);   (2) involvement in earlier actual or potential transactions detailed below (Sinaloa Pacific LNG Project, Masco Trading Services, Advisory Group, and Pomelo Connector) (Doc. Requests 6–9 and Dep. Topic 2–4); and (3) structure and activities, including its ownership and organizational structure, investments and interest in CFE-sponsored pipelines, attempted and actual business with CFE, transactions with

Gutierrez, Turrent, Cosio or Bayse, and transfers of money or anything of value between or among Antaeus Group and CFE, CFE-associated entities, entities controlled by Gutierrez or Turrent, and other Calhoun-controlled entities (Doc. Requests 1–4, 10 and Dep. Topics 1–3, 5–6).

### A.   The Waha Connector Agreements

CFEi seeks discovery from Antaeus Group about the transaction at the core of the Mexican Criminal Proceeding—the Waha Connector Agreements.  Discovery from Antaeus Group about this transaction is likely to reveal highly relevant information about Gutierrez's and Turrent's compliance, or lack of compliance, with Mexican procurement laws, their relationship with Calhoun and its impact on their motivations in awarding the Waha Connector Agreements to WWM, and the degree to which persons or entities improperly benefited from the arrangements. (Aponte Decl. ¶¶ 30–35).

### B.   Antaeus Group's Involvement in Three Actual or Potential Transactions Preceding the Waha Connector Agreements

In addition to the Waha Connector Agreements, CFEi seeks to obtain information relating to Antaeus Group's involvement in three attempted or executed transactions that preceded the Waha Connector Agreements—Masco Trading Services, Advisory Group, and the Pomelo Connector.  These transactions were, like the Waha Connector Agreements, attempts by Calhoun, Gutierrez, and Turrent to award Calhoun and his entities substantial CFE business or interests in CFE-sponsored pipelines.  Evidence related to these precursor agreements is likely to advance the Mexican Criminal Proceeding by providing further evidence of the close relationship among the three individuals and of an apparent pattern of steering CFE and CFEi business to Calhoun and Antaeus Group.

1.      **Masco Trading Services ("MTS")**

In 2013, Calhoun established Masco Trading Services ("MTS") in Texas.  MTS was 51% owned by Antaeus Group and 49% owned by an affiliate of MasTec Inc., a Miami-based engineering and construction conglomerate.  (Anson Decl. ¶¶ 39–40).  As noted above, Gutierrez was also a principal of Antaeus Group.  The same year MTS was formed, Calhoun and CFE began negotiations for MTS to manage and supply CFE's U.S. natural gas business.  (Anson Decl. ¶ 41).

In April 2015, CFE and MTS entered into a Memorandum of Understanding ("MoU") to form a joint venture between the two parties wherein MTS would supply natural gas to CFE at a pipeline system in West Texas—obligations closely resembling those later assumed by WWM in the Waha Connector Agreements.  *Id*.  (This CFE-MTS joint venture was never formed.)  (Anson Decl. ¶ 47).  Significantly, Turrent and Gutierrez pursued this proposed joint venture with Calhoun despite MTS's having limited personnel and no real industry experience. (Anson Decl. ¶ 43).  Further, the MoU states that MTS, and therefore Antaeus Group, Calhoun, and potentially Gutierrez, held a stake in two CFE-sponsored pipelines—the Trans-Pecos Trail Pipeline ("TPP") and the Comanche Trail Pipeline ("CTP")—which supply CFE with natural gas from West Texas into Mexico.  (Anson Decl. ¶ 44).  Yet, CFEi has been unable to uncover any evidence that Calhoun, MTS, or Antaeus Group contributed anything of value to earn interests in these pipelines. *Id.*  Notably, Gutierrez did not disclose Antaeus Group's interest in the transaction to CFEi's outside counsel in representations about the transparency of the TPP and CTP contracting processes, which indicates this was something Gutierrez sought to conceal.  (Anson Decl. ¶ 45).

Discovery from Antaeus Group about MTS is likely to illuminate an example of an attempted transaction that was not in CFE's best interest and was instead designed to benefit

Calhoun, a precursor to the alleged criminal activity pertaining to the Waha Connector Agreements that is being investigated by Mexican authorities.

### 2.      Advisory Group LLC

A few months after the 2015 MTS negotiations described above, Gutierrez and Turrent again attempted to arrange for Calhoun to provide CFE with natural gas supply and manage CFEi's U.S. trading and pipeline operations, this time through an entity named Advisory Group LLC ("Advisory Group"). (Anson Decl. ¶¶ 47–48).

Gutierrez and Turrent attempted to persuade CFE's Board to approve a $51 million contract with Advisory Group over bids from British Petroleum and Goldman Sachs—two established industry giants—despite the fact that Advisory Group did not yet exist and had no infrastructure, personnel, or natural gas industry experience. (Anson Decl. ¶¶ 49, 53). Antaeus Group was to own and control Advisory Group. (Anson Decl. ¶ 48). Ultimately, the CFE Board rejected this proposal. (Anson Decl. ¶ 55).

The attempt by Calhoun, Gutierrez, and Turrent to steer business to Advisory Group is another precursor to the Waha Connector Agreements, and discovery relating to it is likely to shed light on the alleged criminal conduct at issue in the Mexican Criminal Proceeding.

### 3.      The Pomelo Connector

A few months after the CFE Board rejected the Advisory Group proposal, Gutierrez and Turrent orchestrated a complicated four-way transaction in January 2016 in another attempt to secure business for Calhoun. (Anson Decl. ¶ 56). As part of a larger project called the South Texas Expansion Project, Gutierrez and Turrent sought to build a 14-mile pipeline, called the Pomelo Connector, connecting to the Texas Eastern pipeline. (Anson Decl. ¶¶ 57–58). Gutierrez, Turrent, and Calhoun developed a four-way transaction in which (1) CFE awarded a special-purpose entity, Pomelo Connector LLC, partly owned by Antaeus Group, the rights to construct

the Pomelo Connector; (2) Pomelo Connector LLC purchased transportation rights on the Texas Eastern pipeline; (3) Pomelo Connector LLC leased these transportation rights back to Texas Eastern Transmission LP, the owner of the Texas Eastern pipeline; and (4) Texas Eastern Transmission LP in turn sold the packaged transportation rights to CFE, likely at a higher price than if CFE had contracted with Texas Eastern Transmission LP directly.  (Anson Decl. ¶¶ 60–64).  Notably, Pomelo Connector LLC never built the Pomelo Connector, and was instead acquired by Spectra Energy in December 2017.  (Anson Decl. ¶ 68).  Similar to the TPP and CTP, there is no evidence that Calhoun, Pomelo Connector LLC, or Antaeus Group contributed equity or capital to the Pomelo Connector to earn an interest in the project.  (Anson Decl. ¶ 66).  It thus seems that the complex four-way transaction may have been structured to provide Antaeus Group (and thus Calhoun and potentially Gutierrez) with an unearned financial interest in the project to the detriment of CFE and CFEi.

In addition, as before, Gutierrez's characterizations to CFEi's outside counsel of the propriety of the Pomelo Connector transactions disclosed neither Calhoun's nor Antaeus Group's involvement, let alone financial stake, in the Pomelo Connector.  (Anson Decl. ¶ 69).  This omission once again indicates an attempt by Gutierrez to conceal Antaeus Group's role and reinforces the need for discovery about Antaeus Group's stake in the Pomelo Connector.

Taken as a group, the MTS, Advisory Group, and Pomelo Connector transactions demonstrate further efforts among Gutierrez, Turrent, and Calhoun preceding the Waha Connector Agreements to direct business to Calhoun on improper terms that did not benefit CFE, and to award Antaeus Group (and thus Calhoun and potentially Gutierrez) an unearned interest in transactions with CFE.  Discovery from Antaeus Group relating to these arrangement is thus likely to shed light

on the relationship among Calhoun, Gutierrez, and Turrent and the similar scheme alleged in the Mexican Criminal Proceeding.

### C.    The Structure and Activities of Antaeus Group

CFEi also requests discovery from Antaeus Group about its ownership and organizational structure, investments and interests in CFE-sponsored pipelines, transactions with Gutierrez, Turrent, Cosio, or Bayse, and transfers of money or anything of value between and among Antaeus Group and CFE, CFE-associated entities, entities owned by these individuals, and other Calhoun-owned entities.  All of this discovery will help the Mexican prosecutors understand the nature of Antaeus Group, how Calhoun used it, and its connections and relationships with persons and entities relevant to the Mexican Criminal Proceeding.  Such discovery is likely to yield information about Gutierrez's and Turrent's violation of Mexican procurement laws in awarding the Waha Connector Agreements to WWM and Calhoun, and payments among Gutierrez, Turrent, Calhoun, and their entities.

## SECTION 1782 ENTITLES CFEI TO TAKE DISCOVERY FROM ANTAEUS GROUP

### I.    CFEi's Application Meets Section 1782's Threshold Requirements

Pursuant to 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."

In order to obtain discovery pursuant to Section 1782, a party must satisfy three threshold requirements:  (1)  the person or entity from whom discovery is sought must reside or be found in the district where the application is filed; (2) the discovery must be for use in a proceeding in a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or "any interested person."  28 U.S.C. § 1782.  This Application satisfies each of these requirements.

*First*, Antaeus Group resides in this district.  Publicly available information confirms that Antaeus Group's registered address is 2304 Portofino Ridge Drive., Austin, Texas 78735.  (Anson Decl. ¶ 15).  An entity "resides or is found" for the purposes of Section 1782 in the district where it is headquartered or maintains its principal place of business.  *See LEG Q LLC* v. *RSR Corp.*, No. 3:17-CV-1559-N-BN, 2017 WL 3780213, at *6 (N.D. Tex. Aug. 31, 2017).

*Second*, the discovery is sought for use in the ongoing Mexican Criminal Proceeding.  Section 1782 expressly allows a court to authorize discovery for use in criminal investigations, including criminal investigations "conducted before formal accusation."  28 U.S.C. § 1782.  Discovery is deemed "for use" in a foreign proceeding if it helps to "determine the nature of the relationships and interactions between the parties" to the foreign proceeding, one of the key purposes for which discovery is sought here.  *In re Request for Judicial Assistance from the Consumer Court of Istanbul in Istanbul, Turkey*, 2021 WL 6750936, at *2 (W.D. Tex. June 11, 2021).

Here, under the Mexican National Criminal Procedure Code ("CNPP"), CFEi had a duty to report its knowledge of Gutierrez's and Turrent's potential crimes to the Mexican Attorney General's Office. (Aponte Decl. ¶¶ 19–20).  CFEi has already provided Mexican prosecutors with information relating to their ongoing investigation and intends to continue to present evidence as an independent party in the criminal proceedings.  (Aponte Decl. ¶ 35). Moreover, as described above, the discovery sought through this application will further the Mexican prosecutors' understanding of the nature of the relationship among Gutierrez, Turrent, and Calhoun and the deals they orchestrated together.

*Third*, CFEi is an interested party in the foreign proceeding, as it is both a victim of its former executives' alleged violations of the Mexican Constitution, criminal code, and

procurement laws, and is the party that filed the criminal complaint triggering the investigation. The term "interested party" as used in Section 1782 extends beyond litigants in the foreign proceeding and includes a complainant whose complaint triggers an investigation, as well as the victim in the proceedings.  *See Intel*, 542 U.S. 241 at 256–57; *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) (complainant in a criminal investigation satisfies the "interested person" requirement of § 1782) (citation omitted); *Matter of Application of O2CNI Co., Ltd.*, 2013 WL 5826730, at *11 (N.D. Cal. Oct. 29, 2013) ("an 'interested person' is one who possesses a reasonable interest in obtaining [judicial] assistance and includes a complainant who triggers an investigation by a state investigative body") (internal quotation marks omitted); *In re Caceres*, 2020 WL 2523120, at *2 (S.D. Miss. May 18, 2020) (complainant triggering foreign proceeding with the right to submit evidence qualified as an "interested person" under Section 1782).

Significantly, here, under Mexican law, as the owner of assets affected by Gutierrez's and Turrent's suspected criminal acts, CFEi is an "injured party" as defined by the CNPP.  (Aponte Decl. ¶ 21).  As such, CFEi has significant participation rights in the criminal investigation in Mexico.  (Aponte Decl. ¶¶ 21–23).  Among these is the right to participate in the criminal proceedings as an independent party called a *coadyuvante*, capable of presenting evidence, arguments, and demands.  (Aponte Decl. ¶¶ 24–27).  The CNPP allows victims to present any lawfully obtained evidence.  *Id*.  After an indictment is filed by the prosecutors, the injured party may also request corrections to the indictment and offer additional evidence that it believes further supports the indictment.  *Id*.

Given CFEi's interest in the investigation as the complaining victim, its prior provision of information for use in the investigation to the Mexican authorities, and its ongoing ability to provide information, it clearly qualifies as an interested party under Section 1782.

16

## II.     CFEi's Application Also Meets the Discretionary Factors Courts Consider in Granting Section 1782 Applications

The Supreme Court has directed district courts to consider four factors in exercising their discretion to grant a Section 1782 application: (1) whether the entity from which discovery is being sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal-court assistance; (3) whether the Section 1782 request is merely "an attempt to circumvent foreign proof gathering restrictions" or policies of a foreign country; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel Corp.*, 542 U.S. at 264-65.  As detailed further below, each factor weighs heavily in favor of granting the requested discovery here.

### A.     Antaeus Group Is Not a Participant in the Mexican Criminal Proceeding

Antaeus Group is not a participant or party to the Mexican Criminal Proceeding. (Aponte Decl. ¶ 28).  There is no established procedure in place for CFEi to obtain and introduce the evidence sought in this Application into the proceedings, absent granting of the Application. *Id.*[4]  Rather, the documents and information sought by this application are located in the United States, and are outside of CFEi's reach through recourse to Mexican courts.  *Id*.  *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

---

[4]     It is not uncommon for a civil-law system, like Mexico's, to lack the pretrial discovery system that exists in the U.S.  *See Intel*, 542 U.S. at 261, n.12 ("The drafters of  § 1782 were quite aware of the circumstance that civil law systems generally do not have American type pretrial discovery, and do not compel the production of documentary evidence.") (quoting Smit, Recent Developments in International Litigation, 35 S. Tex. L. Rev. 215, 235, n. 93 (1994)).

**B.      The Mexican Authorities Are Receptive to U.S. Judicial Assistance**

The second *Intel* factor considers the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government to U.S. judicial assistance.  542 U.S. at 264.  As an initial matter, the receptivity of the Mexican authorities to information provided by CFEi is already clearly established: the criminal investigation is premised on such information.  (Aponte Decl. ¶¶ 30–35).

Moreover, in the absence of a "clear directive" that the Mexican authorities would reject evidence obtained under Section 1782, this factor weighs in favor of exercising discretion to grant a section 1782 application.  *Ecuadorian Plaintiffs* v. *Corp.*, 619 F.3d 373, 377 (5th Cir. 2010); *see also In re Application of Eurasian Bank Joint Stock Co.*, 2015 WL 6438256, at *3 (N.D. Tex. Oct. 21, 2015).  A negative directive is "clear" if it is "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures."  *In re Sarrio S.A.*, 173 F.R.D. 190, 196 (S.D. Tex. 1995) (citation omitted). There is no such directive here.  To the contrary, Mexico's CNPP specifically allows for the victim of a crime to participate in the criminal proceedings as an independent party with the right to share evidence with prosecutors or present evidence, arguments, and demands of its own accord. (Aponte Decl. ¶¶ 21–27).  *See Grupo Mexico Sab De CV*, 2014 WL 12691097, at *3 (N.D. Tex. Oct. 17, 2014) (finding no authoritative evidence that a Mexican court would reject additional evidence); *see also In re Application of Qumma*, 2005 WL 937486, at *3 (S.D.N.Y Apr. 22, 2006) (same).

Additionally, prior cases have recognized the receptivity of Mexican courts to evidence obtained through Section 1782.  *See Grupo Mexico*, 2014 WL 12691097, at *3; *In re Application of Qumma*, 2005 WL 937486, at *3.  Therefore, it is clear that the Application satisfies the discretionary factor of the receptivity of Mexican authorities to U.S. judicial assistance.

## C. This Application Is an Attempt to Obtain Probative and Relevant Evidence for a Foreign Proceeding, and in No Way Circumvents Foreign Proof-Gathering Restrictions

In determining whether an application constitutes an effort to circumvent foreign proof-gathering restrictions, the district court will assess whether the discovery is being sought in bad faith. *Minatec Fin. S.A.R.L. v. SI Group Inc*., No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y Aug. 18, 2008) ("The primary issue for us is whether [the applicant] is pursuing this discovery in bad faith."). Of particular concern are applications that seek to end-run a previous unfavorable ruling by the foreign tribunal. *See In re Microsoft Corp*., 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006), abrogated on other grounds by *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).

That is not the case here. As discussed above, CFEi has the ability to present the Mexican Special Anti-Corruption Prosecutor investigating the conduct at issue with relevant documents and information and to act as a "party" to the proceeding. (Aponte Decl. ¶¶ 21–27). CFEi's request for discovery from Antaeus Group is a good faith effort to obtain probative evidence related to Antaeus Group's dealings with Gutierrez and Turrent regarding their orchestration of the Waha Connector Agreements and other transactions that relate to the subject of the Mexican Criminal Proceeding.

## D. The Discovery Sought Is Not Unduly Intrusive or Burdensome

The documents and testimony sought by CFEi are neither intrusive nor unduly burdensome. The discovery sought here is tailored to activities and communications between and among Calhoun, acting through Antaeus Group, and Gutierrez and Turrent. It seeks to obtain information about the scope of the misconduct and procurement violations at issue in the Mexican Criminal Proceeding, as well as information relating to other relevant and connected misconduct on the part of Gutierrez and Turrent. Such discovery clearly falls well within the scope of

discovery permitted by the Federal Rules.  *See Chevron Corp.* v. *3TM Consulting,* LLC, 2010 WL 8814519, at *1 (S.D. Tex. Apr. 5, 2010) (discovery requests not unduly intrusive or burdensome where information sought went to central issues in foreign proceeding and would have been permitted under the Federal Rules of Civil Procedure).

### III.    This Application Should Be Granted *Ex Parte*

The Court should also grant this application *ex parte*.  Applications under Section 1782 are frequently addressed on an *ex parte* basis.  *In re Application of Eurasian Bank Joint Stock Co.*, 2015 WL 6438256, at *2 (N.D. Tex. Oct. 21, 2015) ("It is neither uncommon nor improper for district courts to grant applications made pursuant to Section 1782 *ex parte*") (quoting *Gushlak* v. *Gushlak,* 486 F. App'x 215, 217, 2012 WL 2549813 (2d Cir. Jul. 3, 2012)); *see also In re Frederick*, 2020 WL 5742772, at *3, n.2 (W.D. Tex. Sept. 24, 2020) (same).  Courts in the Fifth Circuit routinely grant Section 1782 applications on an *ex parte* basis where the application is for issuance of subpoenas and the substantial rights of the subpoenaed entity are not implicated by the application.  *In re Application of Eurasian Bank Joint Stock Co.*, 2015 WL 6438256, at *1.  *See also In re Akhmedova*, 2020 WL 6376651, at *4 (W.D. Tex. Oct. 30, 2020) (granting *ex parte* Section 1782 application); *In re Ex Parte Application of Grupo Mexico SAB de CV for an Ord. to Obtain Discovery for Use in a Foreign Proceeding*, 2015 WL 12916415 (N.D. Tex. Mar. 10, 2015), *aff'd sub nom. Grupo Mexico SAB de CV* v. *SAS Asset Recovery, Ltd*., 821 F.3d 573 (5th Cir. 2016) (granting *ex parte* Section 1782 application in aid of foreign proceeding in Mexico).

Here, premature notice of this application or the discovery requests may prompt Antaeus Group to take steps to remove evidence relevant to this matter from this Court's jurisdiction.  The *ex parte* relief sought here is limited in scope—issuance of subpoenas to Antaeus Group for a deposition and production of documents—and does not adversely affect Antaeus

20

Group's rights: Antaeus Group may, if it chooses, move to quash or modify the subpoena once served.  *See In re Application of Eurasian Bank Joint Stock Co.*, 2015 WL 6438256, at *1.

## **CONCLUSION**

For all the foregoing reasons, CFEi respectfully requests that the Court enter an *ex parte* order, pursuant to 28 U.S.C. 1782, granting it leave to serve Antaeus Group with the subpoenas annexed to the Application as Exhibits 1 and 2.

Dated: New York, New York
April 14, 2022

REED SMITH LLP

By: */s/  William W. Russell*
William W. Russell
401 Congress Avenue
Suite 1800
Austin, TX 78701

- and -

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

Michael E. Gertzman (*pro hac vice* forthcoming)
Mark F. Mendelsohn (*pro hac vice* forthcoming)
Harris Fischman (*pro hac vice* forthcoming)
Justin D. Lerer (*pro hac vice* forthcoming)
Maria H. Keane (*pro hac vice* forthcoming)
1285 Avenue of the Americas
New York, New York 10019-6064

*Attorneys for Applicant CFE International LLC*