# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| *IN RE EX PARTE* APPLICATION OF <br> CFE INTERNATIONAL LLC, <br>                Applicant, <br><br> V. <br><br> ANTAEUS GROUP LLC, <br>                Respondent. | § § § § § § § § § | **Case No. 1:22-CV-365-LY-ML** |
| *IN RE EX PARTE* APPLICATION OF <br> CFE INTERNATIONAL LLC, <br>                 Applicant, <br><br> V. <br><br> ARBOR GLEN CONSULTING, LLC, <br>                Respondent. | § § § § § § § § § § | **Case No. 1:22-CV-429-LY-ML** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

      CFE International LLC ("CFEi") seeks documents and deposition testimony from Antaeus Group LLC ("Antaeus") and Arbor Glen Consulting, LLC ("Arbor Glen" and, together with Antaeus, "Respondents"), pursuant to 28 U.S.C. § 1782, in aid of a Mexican criminal investigation (the "Mexican Investigation") concerning the award of certain natural gas contracts to a third party (the "Applications"). *In re Ex Parte Application of CFE Int'l LLC as to Antaeus Grp. LLC*, 1:22-CV-365-LY-ML ("Antaeus Application"), Dkt. # 1; *In re Ex Parte Application of CFE Int'l LLC as to Arbor Glen Consulting, LLC*, 1:22-CV-429-LY-ML ("Arbor Glen Application"), Dkt. # 1. Respondents' Motions to Quash Subpoenas Issued Pursuant to 28 U.S.C. § 1782 and, Alternatively, Motions for Protective Order are before the court. Antaeus Application, Dkt. # 34;

Arbor Glen Application, Dkt. # 33.[1]  Having considered the parties' written submissions and oral arguments, the court submits this Report and Recommendation[2] to the District Judge.

## I. BACKGROUND

### A. Relevant Parties

CFEi is a U.S.-based natural gas company and wholly owned subsidiary of Mexico's state-owned electric utility, *Comisión Federal de Electricidad* ("CFE").  Antaeus Application, Dkt. # 1-1 at 4; Arbor Glen Application, Dkt. # 3 at 5.  CFEi was formed in 2015, and its principal place of business is in Houston.  Antaeus Application, Dkt. # 3, Declaration of Fernando Aponte Martínez ("Aponte Decl.")[3] ¶ 4.  CFEi operates as the international trading arm of CFE, procuring natural gas in the U.S. market for transport to Mexico for use in electricity production.  *Id.* ¶ 10.

Javier Gutierrez Becerril ("Gutierrez") is a former executive of CFE and former Chief Operating Officer of CFEi.  Antaeus Application, Dkt. # 1-1 at 1; Arbor Glen Application, Dkt. # 3 at 1.  Guillermo Turrent Schnaas ("Turrent") is a former CFE executive and former CFEi Chief Executive Officer.  *Id.*[4]

Respondent Antaeus is an Austin-based company that was formed in 2013 by an individual named Matthew Calhoun.  Antaeus Application, Dkt. # 34 at 3.  According to CFEi, Calhoun has longstanding personal and professional relationships with Gutierrez and Turrent.  Antaeus

---

[1] This action was referred to the undersigned pursuant to Rules CV-72 and 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).
[2] At the hearing, after considering the parties' written and oral arguments, the undersigned informed the parties of the recommendation he intended to make and explained his reasoning. This Report and Recommendation was prepared by the Respondents but accurately reflects the undersigned's reasoning and analysis as stated at the hearing.
[3] The Aponte Decl. was also filed in the Arbor Glen Application at Dkt. # 4.
[4] Gutierrez joined CFE in April 2014 and served as Subdirector of Modernization there through February 2017.  He also served as Chief Operating Officer of CFEi from June 2015 until December 2018.  Aponte Decl. ¶ 31.  Turrent served as Director of Modernization at CFE from January 2013 through September 2016.  He was also the Chief Executive Officer of CFEi from June 2015 until December 2018.  *Id.*

2

Application, Dkt. # 1-1 at 1.  Furthermore, CFEi states that Gutierrez was formerly a principal of Antaeus.  *Id.* at 2.

Calhoun is also the co-founder and President of Commercial Operations of another company, WhiteWater Midstream LLC ("WWM"), a U.S.-based midstream service provider that operates in the gas delivery and sale business.  Antaeus Application, Dkt. # 2, Declaration of Sam Anson ("Antaeus Anson Decl.") ¶ 17.  Its principal place of business is Austin, Texas.  *Id*.  Although not a party to this proceeding, WWM is relevant to the Applications because it was the beneficiary of several natural gas contracts awarded by CFE, which are the subject of the Mexican Investigation forming the basis of CFEi's Application.

Respondent Arbor Glen, also an Austin-based company, was formed by Arlin Travis in April 2016.  Arbor Glen Application, Dkt. # 33.  Travis is an Austin resident with decades of experience in the energy sector, having previously served as a vice president and director at various firms, including Sempra Energy, Shell, Morgan Stanley, Noble Americas, and BTG Pactual.  *Id.*

### B.     Waha Connector Agreements

In 2014, Mexico's government instituted a constitutional reform that opened the country's energy sector to private investment and competition.  Aponte Decl. ¶ 6.  Around this time, Gutierrez and Turrent joined CFE to help the company take advantage of the energy industry's expanded reliance on natural gas, including from U.S. sources.  Aponte Decl. ¶ 8.

In December 2016, under the leadership of Gutierrez and Turrent, CFE awarded a series of natural gas contracts to WWM to build, transport capacity, and market gas on a Texas pipeline whose construction was sponsored by CFE (the "Waha Connector Agreements").  Aponte Decl. ¶¶ 30–33.  The contracts were comprised of several agreements obligating WWM to construct a connector pipeline for CFE—the Waha Connector—and to market capacity on, and transport large

volumes of natural gas via this pipeline from West Texas to one of CFE's pipeline header systems called the Waha Header. *Id.* ¶ 30. The Waha Connector Agreements contemplated paying WWM hundreds of millions of dollars over the lifetime of the deal. *Id.* ¶ 33.[5]

### C. The Mexican Criminal Investigation

CFE's and CFEi's managements changed with the new Mexican governmental administration. Aponte Decl. ¶¶ 30–33. CFEi's current officers, through a Chief Compliance Officer appointed in December 2020, claim to have discovered that Gutierrez had, in February 2017, executed a formal assignment of several U.S.-based CFE contracts to CFEi without proper power of attorney and public notarization. *Id*. CFEi contends that this discovery prompted a broader review of the contracts, which included the Waha Connector Agreements, as well as a review of the prior management's business conduct. *Id*. Through this process, CFEi asserts that it learned of suspect irregularities in how and on what terms the Waha Connector Agreements were awarded to WWM. *Id*. CFEi states that it discovered the contracts were improperly awarded to WWM, not through a competitive, transparent bidding process, but as a result of cronyism and corruption.

Prior to awarding the contract, CFEi asserts that CFE and its subsidiaries were obligated to undergo and document a public tender process pursuant to Mexican constitutional and criminal laws. Aponte Decl. ¶¶ 14–18. However, at the direction of Gutierrez and Turrent, CFE allegedly failed to seek or receive bids from other entities before committing to award the Waha Connector Agreements to WWM. Antaeus Anson Decl. ¶¶ 71–80. Moreover, CFEi states that WWM lacked the requisite industry experience and credit history that would have qualified it to enter into contracts with such large natural gas volume, term length, and value. Aponte Decl. ¶ 32.

---

[5] These contracts were among the CFE contracts later assigned in early 2017 to CFEi. Aponte Decl. ¶ 30.

According to CFEi, the terms of the agreements unfairly enriched WWM—and presumably Calhoun, Gutierrez, and Turrent—to the detriment of CFE and CFEi, and at the expense of Mexican public assets and Mexican consumers. Aponte Decl. ¶ 32.

In August 2021, CFEi apparently reported these suspected violations of Mexican procurement and criminal anti-corruption laws by submitting a criminal complaint to the Mexican Attorney General. Aponte Decl. ¶¶ 19–20, 34. In response, CFEi states that the Office of the Mexican Special Anti-Corruption Prosecutor in Mexico City opened an investigation into Gutierrez's and Turrent's allegedly criminal acts. Aponte Decl. ¶ 35. CFEi contends that, as a complainant, Mexican law provides CFEi the right to participate in the ongoing investigation and court case, including by submitting evidence. Aponte Decl. ¶¶ 21–27.

CFEi alleges that, in February 2022, the Attorney General of Mexico ("FGR") asked a court in Mexico to hold a hearing to allow prosecutors to present an "*imputación*" against Gutiérrez and a third person accused in the Criminal Complaint in order to initiate a criminal case against them. Antaeus Application, Dkt. # 37-1, Supplemental Declaration of Fernando Aponte Martínez ("Aponte Supp.")[6] ¶ 8 & Ex. 3. CFEi adds that, on May 23, 2022, the Mexican court held the initial hearing, which was attended by the prosecutors and each of the accused and their counsel. Aponte Supp. ¶¶ 9–10. At the request of the accused, the hearing was allegedly adjourned to August 17, 2022. *Id.* ¶ 11 & Ex. 4.

**D.   CFEi's Commercial Dispute with WWM**

In 2016 and 2017, CFE and CFEi entered into a series of contracts with numerous U.S.-based counterparties, including WWM, to facilitate the supply and transportation of natural gas from the United States to Mexico. Anson Decl. ¶¶ 20, 37. They included a long-term gas supply

---

[6] The Aponte Supp. was also filed in the Arbor Glen Application at Dkt. # 36-1.

5

agreement and agreements to build a new connector pipeline in the Waha Header in West Texas and then operate that pipeline (the "Waha Agreements"). Antaeus Application, Dkt. # 34-1, Declaration of Brendan Quigley ("Antaeus Quigley Decl.") ¶ 6. Antaeus was not a party to any of these contracts. *Id*. ¶ 6.

In February 2021, Winter Storm Uri struck Texas, causing substantial increases in gas prices for several days and leading to a payment dispute in relation to February gas trades. Antaeus Application, Dkt. # 34 at 4; Arbor Glen Application, Dkt. # 33 at 4. After settlement discussions proved unsuccessful, on or about July 2, 2021, WhiteWater initiated arbitration against CFEi and CFE for the unpaid invoice. Antaeus Quigley Decl. ¶ 9. The arbitration proceeding remains ongoing. Antaeus Quigley Decl. ¶ 6.

CFEi contends that the WWM arbitration is substantively and temporally distinct from the Mexican Investigation. Antaeus Application, Dkt. # 37 at 6; Arbor Glen Application, Dkt. # 36 at 6. Antaeus contends the two are linked because the corruption allegations lodged by CFEi in Mexico form one of CFEi's defenses to WWM's contract claims in the arbitration. Antaeus Application, Dkt. # 34 at 14; Arbor Glen Application, Dkt. # 33 at 15.

### E.    CFEi's Section 1782 Applications

On April 14, 2022, CFEi filed its *ex parte* Application seeking permission to serve two subpoenas on Antaeus pursuant to 28 U.S.C. § 1782 in aid of the Mexican Investigation (the "Antaeus Subpoenas"). On May 4, 2022, the court granted the Application. Antaeus Application, Dkt. # 20. The Antaeus Subpoenas seek testimonial and documentary discovery, from a period dating from January 30, 2013 through January 31, 2019, relating to Antaeus's:

- involvement in the Waha Connector Agreements (Antaeus Doc. Request 5 and Antaeus Dep. Topic 4);
- involvement in earlier actual or potential natural gas projects referenced above (*i.e.*, Sinaloa Pacific LNG Project, Masco Trading Services, Advisory Group,

- and Pomelo Connector) (Antaeus Doc. Requests 6–9 and Antaeus Dep. Topic 2–4);
- structure and activities, including its ownership and organizational structure (Antaeus Doc. Req. 1 and Antaeus Dep. Topic 1);
- investments and interests in CFE-sponsored pipelines (Antaeus Doc. Req. 2 and Antaeus Dep. Topics 4-5);
- attempted and actual business with CFE, and transactions with Gutierrez, Turrent, and others,[7] (Antaeus Doc. Reqs. 2–4, 10 and Antaeus Dep. Topics 2–3, 5–6); and
- transfers of money or anything of value between or among Antaeus Group and CFE, CFE-associated entities, entities controlled by Gutierrez or Turrent, and other Calhoun-controlled entities (Antaeus Doc. Req. 4).[8]

On May 4, 2022, CFEi filed its *ex parte* Application seeking permission to serve two subpoenas on Abor Glen pursuant to 28 U.S.C. § 1782 in aid of the Mexican Investigation (the "Arbor Glen Subpoenas") (collectively, with the Antaeus Subpoenas, the "Subpoenas"). On May 4, 2022, the court granted the Application. Abor Glen Application, Dkt. # 12. The Arbor Glen Subpoenas seek testimonial and documentary discovery, from a period dating from January 30, 2013 through January 31, 2019, relating to, among other things:

- "any projects or transactions, whether completed or not" for which Arbor Glen provided any services to CFE (Arbor Glen Doc. Req. 1);
- "any projects or transactions, whether completed or not" about which Arbor Glen received any information from CFE (Arbor Glen Doc. Req. 1);
- all of Arbor Glen's "proposed business dealings, engagement by, and work performed" for CFE (Arbor Glen Dep. Topic 2); and
- all of Arbor Glen's "proposed business dealings, engagement by, and work performed" for WhiteWater (Arbor Glen Dep. Topic 3).

On June 16, 2022, Respondents moved to quash the Subpoenas. Antaeus Application, Dkt. # 34; Abor Glen Application, Dkt. # 33. On June 28, 2022, CFEi filed its oppositions in response to the Subpoenas. Antaeus Application, Dkt. # 37; Abor Glen Application, Dkt. # 36. On July 8,

---

[7] These include (1) Emilio Alejandro Cosio Santamaria, whom CFEi describes as an individual who worked closely with Gutierrez and Turrent at CFEi and (2) Mark Bayse, described as a former principal of Antaeus. Antaeus Application, Dkt. # 1-1 at 2.

[8] Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises (Antaeus Application, Dkt. # 1-3) and Subpoena to Testify at a Deposition (Antaeus Application, Dkt. # 1-2).

2022, Respondents filed replies in response to CFEi's oppositions. Antaeus Application, Dkt. # 40; Abor Glen Application, Dkt. # 39.

The parties appeared for oral argument on August 17, 2022.

## II.    APPLICABLE LAW

Section 1782(a) authorizes U.S. courts to order discovery in aid of foreign proceedings only where an applicant shows that the requested materials are "'for use in a proceeding before a foreign or international tribunal.'" *In re Request for Jud. Assistance from the Consumer Ct. of Istanbul in Istanbul, Turkey*, No. 1:21-MC-476-RP, 2021 WL 6750936, at *1 (W.D. Tex. June 11, 2021) (quoting *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012)). This threshold showing merely "authorizes, but does not require" a court to permit discovery, which is wholly discretionary. *See Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264 (2004). In *Intel*, the Supreme Court identified four non-exhaustive factors to guide a court's exercise of discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the requests are unduly intrusive or burdensome. *See id.*

Where an applicant obtains an order allowing it to serve subpoenas under Section 1782 on an *ex parte* basis, the district court should vacate the order and quash discovery where, upon reconsideration, it determines the applicant failed to show that a Section 1782 order was warranted in the first instance. *See In re Microsoft Corp.*, No. C 06-80038JF (PVT), 2006 WL 825250, at *2 n.3 (N.D. Cal. Mar. 29, 2006).

**III.    DISCUSSION**

    **A.    CFEi Does Not Meet the Threshold Requirements of 28 U.S.C. § 1782**

A district court may order discovery if three conditions are met: (1) the person or entity from whom discovery is sought resides in or can be found in the court's district; (2) the application is made by a foreign or international tribunal or "any interested person;" and (3) the discovery is "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782. The parties dispute whether CFEi has demonstrated the third element: that the discovery sought will be "use[d] in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782.

CFEi has not met its burden to satisfy this factor.[9] At the outset, the court is unconvinced that the Mexican Investigation in fact qualifies as a foreign "proceeding" for which Section 1782 may be invoked. Section 1782 allows an interested person to obtain discovery "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). However, that authority is not unlimited: adjudicative proceedings need not be pending or imminent for a court to order discovery, but a "dispositive ruling" must "be within reasonable contemplation." *Intel*, 542 U.S. at 259.

The court's analysis of this question is hampered by the dearth of concrete information about the subject matter, scope, and status of the Mexican Investigation. Citing confidentiality obligations it contends are imposed by Mexican law, CFEi did not attach its criminal complaint

---

[9] There is no dispute that the first two statutory elements are satisfied: Respondents can be found within this district, and CFEi, as a criminal complainant in the Mexican Investigation, qualifies as an "interested person" as demonstrated by its ability to submit evidence in support of a criminal proceeding under Mexican law. *See Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 256 (2004) (Among others who "possess[ ] a reasonable interest in obtaining [judicial] assistance," a complainant who "triggers" an investigation by a state investigative body or a litigant in a foreign action qualifies as an "interested person" under § 1782).

9

and has provided no other primary documentation describing the current status or scope of the Mexican Investigation that would enable the court to independently assess the proceedings that CFEi suggests are ongoing.[10]  Among other deficiencies, nothing in the instant record indicates that a dispositive ruling is within reasonable contemplation.  If anything, CFEi's description of the Mexican Investigation's procedural status appears to suggest that no criminal action may ever commence.  Specifically, CFEi states that the FGR in February "asked a court in Mexico to hold a hearing to allow prosecutors to present an '*imputación*' against Gutiérrez and the third person accused in the criminal complaint in order to initiate a criminal case against them."  Aponte Supp. ¶ 8 & Ex. 3.  By CFEi's description, "once the *imputación* has been presented and accepted by the judge, the FGR can continue to investigate for six months or more, after which it will decide whether to proceed to trial."  *Id.* ¶ 12.  Having been initially adjourned from May 23, 2022 until August 17, 2022 (and apparently now to October based on statements made by CFEi's counsel during the oral argument), there is still no indication this preliminary hearing has occurred or that an *imputación* has been presented by prosecutors or accepted by a court.  These procedural circumstances make it difficult to conclude that a dispositive ruling is within reasonable contemplation, as required by the Supreme Court in *Intel*.  *See Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015) ("At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.").

CFEi has also not carried its burden to demonstrate that the discovery sought is "for use" in the Mexican Investigation.  First, CFEi's description of the Mexican Investigation reflects that

---

[10] According to a translation submitted by CFEi, a preliminary hearing for Gutierrez and a third party was scheduled for May 23, 2022 but was deferred until August 17, 2022.  *See* Aponte Supp. ¶ 8 & Ex. 4.

the Subpoenas extend far beyond the transactions at issue in that investigation, suggesting that the discovery sought is not "for use" in that investigation. According to CFEi's Applications, and as acknowledged by its counsel at the hearing, the criminal complaint and resulting investigation relate solely to alleged criminality surrounding CFE's award of the Waha Connector Agreements to WWM. *See* Antaeus Application, Dkt. # 1-1 at 5–8; Arbor Glen Application, Dkt. # 3 at 6–9. Yet CFEi seeks evidence concerning various earlier dealings between entities associated with Gutiérrez, Turrent, and Calhoun.

CFEi argues that information about these prior relationships and transactions could help establish a pattern of misconduct to buttress the case of procurement violations at issue in the Mexican Investigation, and "help show the conflicts of interest and cronyism that defined the relationships among the three individuals." Antaeus Application, Dkt. # 37 at 5; *see also* Arbor Glen Application, Dkt. # 36 at 6. Even accepting CFEi's Applications at face value, a large portion of the requests constitute the very kind of "fishing expedition" district courts are counseled to guard against. *See In re Request for Assistance for Ministry of Legal Affs. of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on other grounds by Intel*, 542 U.S. 241 ("If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request."); *see also In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV. 1801 NRB, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014).

Instead of the tailored requests that have garnered favorable treatment in other cases, CFEi essentially asks this court to open wide Respondents' and potentially other parties' books on the grounds that such discovery may uncover evidence tangentially related to the criminal conduct being investigated. *See In re Certain Funds, Accts. &/or Inv. Vehicles Managed by Affiliates of*

11

*Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 8, 2014) (acknowledging a court's role in "guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse"). Especially given the lack of clarity regarding the subject matter and scope of the Mexican Investigation, there is no basis for the court to conclude that the broad discovery sought by CFEi is primarily sought "for use" in the Mexican Investigation.

Second, there is no indication that Mexican authorities have requested CFEi's assistance in collecting evidence in aid of the investigation or have any interest in that assistance. Although Section 1782 does not require an applicant to defer to prosecutors to seek discovery, the fact that Mexican officials have not done so here only detracts from the likelihood that the discovery sought by CFEi is needed or useful to the Mexican Investigation.

Finally, this court is particularly troubled by CFEi's inability to agree to a protective order that would limit its ability to use Respondents' evidence for purposes other than the Mexican Investigation.[11] If CFEi truly sought the requested evidence for use in the Mexican Investigation, there is no reason for it to have shown such reluctance to cabin its use of materials for that purpose, and counsel for CFEi provided none when asked at the hearing.[12] Such a reticence suggests that CFEi's true intent in this matter is not primarily to aid law enforcement in the Mexican Investigation, but to gather information and documents for its own unspecified alternative purposes.[13] *Cf. Intel*, 542 U.S. at 266 ("no one has suggested that AMD's complaint to the

---

[11] At the hearing, CFEi argued that the default rule is that once discovery is obtained it can be used for any purpose. While that may be the default rule, this court's experience is that non-public information from sophisticated parties is almost universally disclosed subject to a protective order.

[12] Although the court recognizes that CFEi agreed to a protective order towards the end of the August 17, 2022 hearing, CFEi refused to consent to a protective order in briefing or until questioned by the court.

[13] As previously noted, in the arbitration with WWM, CFE and CFEi contend the contracts at issue should not be enforced because they were procured through corruption.

Commission is pretextual"); *In re Application of the Gov't of Lao People's Democratic Republic*, No. 1:15-MC-00018, 2016 WL 1389764, at *7-8; (quashing Section 1782 subpoena in part due to indicia of applicant's ulterior motive); *see also In re Accent Delight Int'l Ltd.,* 869 F.3d 121, 135 (2d Cir. 2017) (evidence that parties instituted sham litigation as a cover to obtain Section 1782 discovery for use in other proceedings "might support denying the Section 1782 application altogether"); *Lazaridis v. Int'l Ctr. for Missing & Exploited Child., Inc.*, 760 F. Supp. 2d 109, 215 (D.D.C. 2011) (applicant's "wide-ranging request suggests that [he] is seeking information more for his general use than for use by the Greek tribunals in their investigation or prosecution of specific criminal acts").

In sum, CFEi has failed to carry its burden to establish § 1782's requirement that the discovery CFEi seeks is "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a).

### B. Discretionary Factors Weigh Against Granting CFEi's Application

Because CFEi has not met its burden to establish the threshold statutory requirements for relief under § 1728, the court must deny the Applications. However, even if the statutory requirements were satisfied, the court would nevertheless deny the Applications and quash the Subpoenas as a matter of sound discretion. *See Intel*, 542 U.S. at 264 ("a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so").

The Supreme Court has highlighted several nonexclusive factors courts should consider when assessing whether to grant § 1782 applications: (1) whether the respondents are participants in the foreign proceeding; (2) "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent

foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F. Supp. 3d 899, 902 (S.D. Tex. 2016) (citing *Intel Corp.*, 542 U.S. at 264). The Court addresses each factor below.

1. First Factor

The first factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. If so, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id*. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* The first factor arguably favors granting the Applications because Respondents are not currently participants in the Mexican Investigation. However, because many of CFEi's requests seek information and records that would ostensibly be expected to be in the possession of Gutierrez, Turrent, or CFE itself,[14] the rationale of the first factor—*i.e.*, the need for foreign discovery that would otherwise be unavailable—is lessened. *See Intel*, 542 U.S. at 264. Moreover, while Respondents are not currently known subjects of the Mexican Investigation, CFEi's allegations make clear that they could potentially become subjects in the future. *See, e.g*., Antaeus Application, Dkt. # 37 at 1 ("Antaeus and its principal Matthew Calhoun directly participated in the transactions and events

---

[14] *See, e.g*., Antaeus Doc. Req. 9 (regarding "the timing and nature of Gutierrez's role" in an unrelated Mexico-based pipeline project, including "any financial interest obtained by or granted to…Gutierrez"); Antaeus Doc. Req. 3 ("all Antaeus Group's proposed or finalized transactions with Gutierrez, [or] Turrent…"); Antaeus Doc. Req. 4 ("all payments and transfers … between or among Antaeus Group and CFE, Gutierrez, [and] Turrent…"); *id*. (documents regarding Mexican Advisors, an "entity formed by Gutierrez and Turrent on October 24, 2012") (emphases added).

that led Turrent and Gutiérrez to award massive natural gas contracts to subsidiaries of WhiteWater Midstream, LLC . . . in violation of Mexican laws."); Arbor Glen Application, Dkt. # 36 at 1 ("Arlin Travis directly participated in the transactions and events that led Turrent and Gutiérrez to award massive natural gas contracts to subsidiaries of WhiteWater Midstream, LLC . . . in violation of Mexican laws.").

        2.      Second Factor

The second *Intel* factor requires the court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. With respect to this factor, CFEi highlights the lack of evidence suggesting that Mexican authorities are unreceptive to receiving discovery from the United States and observing that they have previously done so. Antaeus Application, Dkt. # 37 at 14–15; Arbor Glen Application, Doc. ECF 36 at 15.

In response, Respondents argue that CFEi has offered no persuasive evidence that Mexican prosecutors in this case want additional discovery (or even know about the volume of discovery sought by CFEi here). Antaeus Application, Dkt. # 34 at 11; Arbor Glen Application, Dkt. # 33 at 11-12. They also point out that neither the Mexican prosecutors nor the Mexican court have attempted to obtain evidence from the United States, even though they are undoubtedly aware of the MLAT process. Antaeus Application, Dkt. # 34 at 11-12; Arbor Glen Application, Dkt. # 33 at 12. Lastly, Respondents argue that compelling them to produce discovery to CFEi in this context would cause undue prejudice by subjecting Respondents to potential criminal exposure in Mexico without the ability to interface directly with Mexican prosecutors. Antaeus Application, Dkt. # 34 at 12; Arbor Glen Application, Dkt. # 33 at 12-13.

Respondents' concerns are well founded. The court appreciates that Section 1782(a) covers criminal investigations conducted before formal accusation, and that CFEi as complainant is an interested party to the Mexican Investigation. *See Intel,* 542 U.S. at 256. But the court is not required to grant discovery just because the statute allows it. *See id.* at 264. It is commonplace for companies in the United States to assist criminal authorities investigating a case, ordinarily, by providing their own information and records. But, as in *In re O2CNI Co.*, this is more than a subpoena directed at a third party with relevant information: CFEi "wants to act as investigator for the [Mexican] authorities against the entities that it wants the [Mexican] authorities to charge." No. C 13-80125 CRB (LB), 2013 WL 4442288, at *6 (N.D. Cal. Aug. 15, 2013). And, the court notes that CFEi could not explain why it was so intent on gathering these documents itself, in the absence of a protective order, without any indication of interest from the Mexican authorities in these materials. CFEi's actions suggest that its intentions here go beyond aiding Mexican criminal authorities. In contrast, the MLAT process provides safeguards appropriate to a criminal case when the evidence is sought from suspects or potential suspects themselves. If Mexican authorities want information from Respondents, they have ample means to request such evidence directly. In light of these considerations, the second factor also weighs against granting the application.

        3.      Third Factor

The third *Intel* factor counsels courts to deny Section 1782 applications that seek to circumvent foreign or U.S. proof-gathering restrictions. As noted above, the Subpoenas seek documents and testimony that seemingly would be available from individuals and entities in Mexico, further signaling an attempt to circumvent proof-gathering restrictions. *See In re IPC, Do Nordeste, LTDA*, No. 12–50624, 2012 WL 4448886, at *7; *see also In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016)

("[A] perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.").

### 4. Fourth Factor

The fourth factor also favors denying the application. As noted, the Subpoenas seek a vast swath of communications, financial records, and other documents from a range of sources. They would effectively open Respondents' books based on little more than allegations of potential wrongdoing by a self-interested party in relation to past business dealings that are not even alleged to be under investigation in Mexico. In this context, granting the Subpoenas in any form would work an abuse on Respondents. *See Intel*, 542 U.S. at 265. Given the breadth and format of the Subpoenas, the court is not inclined to "trim" the requests to something more reasonable, which CFEi had ample opportunity to do. *Financialright GmbH v. Robert Bosch LL,* 294 F. Supp. 3d 721, 739–40 (E.D. Mich. 2018).

### 5. Conclusion

The court finds that the discretionary factors, taken together, warrant denial of the requests for § 1782 relief. As discussed above, CFEi is not prejudiced because the MLAT procedure remains available to Mexican prosecutorial or judicial authorities to seek the evidence if they deem it necessary.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the District Court **GRANT** Respondents' Motions to Quash (Antaeus Application, Dkt. # 34; Abor Glen Application, Dkt. # 33) and **VACATE** the prior order granting CFEi's *Ex Parte* Applications for Judicial Assistance Pursuant to 28 U.S.C. § 1782 to Aid in Foreign Proceeding (Antaeus Application, Dkt. # 20; Abor Glen Application, Dkt. # 12).

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED August 26, 2022.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE